1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFFREY S ALDAN,

               Plaintiff,

    v.

HOME DEPOT USA INC, d/b/a The Home
Depot #4720, a foreign corporation,

               Defendant.

CASE NO. 3:20-cv-05694-TL

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT ON DAMAGES AND
GRANTING PLAINTIFF'S MOTION
FOR CONTINUANCE

      This matter is before the Court on Defendant The Home Depot U.S.A., Inc.'s Motion for

Partial Summary Judgment on Damages (Dkt. No. 24) and Plaintiff Jeffrey S. Aldan's Motion to

Continue Trial and Amend the Case Schedule (Dkt. No. 54). Plaintiff filed this suit for personal

injuries allegedly sustained when he was struck by a cart in the parking lot of a Home Depot

store. Dkt. No. 1-1. Having considered the Parties' briefing, oral arguments, and the relevant

record, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's motion for summary

judgment and GRANTS Plaintiff's request for continuance.

# I.   RELEVANT BACKGROUND

This case arises from an incident that occurred in November 2017, when Plaintiff was struck by a cart while standing in the parking lot of a Home Depot store. Dkt. No. 1-1. Defendant claims that he sustained injures due to the negligence of Defendant's employees acting within the scope of their employment. *Id.* Plaintiff seeks damages, including "all special and economic damages suffered by the plaintiff." *Id.*

Trial in this case is currently set for February 6, 2023. Dkt. No. 23. The trial date previously has been continued four times with corresponding adjustments to the case schedule by stipulation of the parties. Dkt. Nos. 14, 16, 19, 23. Most recently, the Parties stipulated in December 2021 to continue the trial and extend relevant disclosure deadlines so Plaintiff could pursue additional medical treatment related to the injuries at issue in this case. *See* Dkt. No. 18. That additional treatment resulted in Plaintiff requiring a surgery (alleged to be related to the incident), which was scheduled for just prior to the extended expert disclosure deadline. *See* Dkt. No. 22 at 2. As such, the Parties again agreed to request an extension of discovery related deadlines to allow "experts on both sides [to] have the benefit of the additional treatment records from Plaintiff's surgery and post-op follow up." *Id.* The Court granted the parties' requested extension.[1] Dkt. No. 23. The extended discovery and disclosure deadlines have now passed. *See id.*

On August 25, after the extended expert disclosure deadlines, Defendant filed the instant motion for partial summary judgment to dismiss Plaintiff's claims for specific forms of damages,

---

[1] Although the Parties initially requested only an extension of pretrial deadlines without changing the previous trial date (*see* Dkt. No. 22-1), per the Court's Standing Order in All Civil Cases, the Court was unwilling to reduce the time between the dispositive motions deadline and trial as requested by the Parties. As such, and with approval of the Parties, the Court granted the stipulated motion and entered an amended schedule consistent with the Parties' request while resetting the trial date to comply with the Court's standing order. *Compare* Dkt. No. 22-1 *with* Dkt. No. 23.

1   including past medical costs, future medical treatment and costs, past wage loss, loss of future

2   earning capacity, and other undisclosed economic damages. Dkt. No. 24 at 1-2. Plaintiff

3   responded in opposition to the motion (Dkt. No. 26), and Defendant replied (Dkt. No. 28). The

4   Court heard oral arguments from the Parties on the motion. Dkt. No. 51.

5          At the hearing on the motion, the Court directed Plaintiff to supplement the record with

6   legal authority to support his position that producing medical bills coupled with disclosing the

7   treating physician's intent to testify as to the reasonableness and necessity of the treatment is

8   sufficient to allow the treating physician to further opine regarding the reasonableness of the

9   charges for the services, without specifically disclosing the cost-related subject matter. The Court

10  also indicated that it would consider continuing the trial one additional time upon an appropriate

11  motion. The Court received Plaintiff's supplement (Dkt. No. 52), as well as a response from

12  Defendant regarding the Plaintiff's supplemental authority (Dkt. No. 53). Plaintiff then filed an

13  opposed motion to continue. *See* Dkt. Nos. 54-56. Being now fully appraised of the relevant

14  facts, issues, and arguments, the Court rules as follows.

15                              II.     LEGAL STANDARD

16  **A.      Summary Judgment**

17         Summary judgment is appropriate where "the movant shows that there is no genuine

18  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

19  Civ. P. 56(a). At this stage, the Court does not make credibility determinations, nor does it weigh

20  the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Munden v.*

21  *Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). The inquiry turns on "whether the

22  evidence presents a sufficient disagreement to require submission to a jury or whether it is so

23  one-sided that one party must prevail as a matter of law." *Id.* at 251–52. A genuine triable issue

24  of material fact exists where "the evidence is such that a reasonable jury could return a verdict

1    for the nonmoving party." *Id.* at 248; *see also McSherry v. City of Long Beach*, 584 F.3d 1129,

2    1135 (9th Cir. 2009) (explaining that this is the inquiry at the summary judgment stage,

3    "[s]tripped to its core"). To establish that a fact cannot be genuinely disputed, the movant can

4    either cite the record or show "that the materials cited do not establish the ... presence of a

5    genuine dispute, or that an adverse party cannot produce admissible evidence to support the

6    fact." Fed. R. Civ. P. 56(c)(1).

7            Once the movant has made such a showing, "its opponent must do more than simply

8    show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*,

9    *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citation omitted); *see also Liberty*

10   *Lobby*, 477 U.S. at 252 (specifying that the non-movant "must show more than the mere

11   existence of a scintilla of evidence"); *accord In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387

12   (9th Cir. 2010). The non-movant "bears the burden of production under [FRCP] 56 to 'designate

13   specific facts showing that there is a genuine issue for trial.'" *Ricci v. DeStefano*, 557 U.S. 557,

14   586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Additionally, "all

15   justifiable inferences" must be drawn in the non-movant's favor, *id.* at 255 (citing *Adickes v. S.*

16   *H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Thus, "where the facts specifically averred by

17   [the non-moving] party contradict facts specifically averred by the movant, the [summary

18   judgment] motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

19   **B.    Continuance and Schedule Amendment**

20          Plaintiff's request to continue the trial and amend the case management schedule is

21   governed by Federal Rule of Civil Procedure 16(b)(4), which requires a showing of good cause.

22   Similarly, good cause is required to change pretrial disclosure deadlines. Fed. R. Civ.

23   P. 26(a)(3)(b). The decision to modify a scheduling order is within the broad discretion of the

24   district court. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). The

Court "primarily considers the diligence of the party seeking the amendment" in applying the good cause standard. *Id.* at 609. If a party has acted diligently yet still cannot reasonably meet the scheduled deadlines, the Court may assert its discretion to modify its scheduling order. *Id.*

### III.   DISCUSSION

**A.   Motion for Summary Judgment**

Defendant asks the Court to find that Plaintiff is unable to produce sufficient facts to support his claims for his medical damages, wage-based damages, and other undisclosed economic damages. Dkt. No. 24 at 2. For the most part, Defendant's arguments center on whether Plaintiff's expert witness disclosures and expert reports are sufficient to raise a genuine dispute of material fact as to Plaintiff's claims for these damages. *See* Dkt. No. 24 at 8-13.

1.   **Medical Damages**

Defendant challenges Plaintiff's claims for (1) past medical costs and (2) future medical treatment and costs. Dkt. No. 24 at 8-10.

a.   ***Past Medical Costs***

In Washington, "[a] plaintiff in a negligence case may recover only the reasonable value of medical services, not the total of all bills paid. . . . [and] only if supported by additional evidence that the treatment and the bills were both necessary and reasonable." *Patterson v. Horton*, 929 P.2d 1125, 1130 (Wash. Ct. App. 1997) (citing *Torgeson v. Hanford*, 139 P. 648, 649 (Wash. 1914)). Medical bills may be offered as proof of actual past medical expenses but are not sufficient on their own to establish the required elements of reasonableness and necessity. *Id.* Additional evidence regarding the reasonableness of medical costs "may come from any witness who evidences sufficient knowledge and experience respecting the type of service rendered and the reasonable value thereof." *Kennedy v. Monroe*, 547 P.2d 899, 906 (Wash. Ct. App. 1976).

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES AND GRANTING PLAINTIFF'S MOTION FOR CONTINUANCE - 5

1      Although Plaintiff has produced past medical bills, Defendant argues that Plaintiff cannot

2   produce evidence speaking directly to the necessity and reasonableness of the cost of past

3   treatment. Dkt. Nos. 24 at 8-9; 28 at 5-8. Defendant argues that any opinion testimony regarding

4   past medical expenses offered by any of Plaintiff's disclosed expert witnesses must be excluded

5   because Plaintiff's disclosures are insufficient as to this subject matter. *Id.* Specifically,

6   Defendant argues that the disclosures of Plaintiff's treating physicians fail to include any

7   cost-related subject matter and fail to summarize any cost-related facts or opinions they will

8   offer. *Id.* Additionally, Defendant argues that the expert reports produced by Plaintiff's retained

9   medical expert, Dr. Darby, do not include sufficient cost-related information to allow Dr. Darby

10  to testify on that subject matter. *Id.*

11                    (1)     Expert Disclosures of Treating Physicians

12      Plaintiff points to his expert witness disclosures identifying all of Plaintiff's individual

13  medical providers, which disclose the providers' intent to testify to the reasonableness and

14  necessity of all medical treatment they provided Plaintiff related to his alleged personal injuries.

15  Dkt. No. 26 at 6 (citing Dkt. Nos. 27-2, 27-3). Defendant argues that the disclosures indicate

16  only that the treating physicians will opine as to the reasonableness and necessity of the

17  *treatment* they provided and are otherwise silent as to the *cost* of said treatment. Dkt. No. 28 at 6.

18  Plaintiff asserts that treating physicians are competent witnesses to provide testimony as to the

19  reasonableness of costs for treatment provided. *Id.* at 2-3 (quoting *Kennedy*, 547 P.2d at 906

20  ("Proof of such special damages need not be unreasonably exacting and may come from any

21  witness who evidences sufficient knowledge and experience respecting the type of service

22  rendered and the reasonable value thereof.")). Plaintiff contends that his disclosures are therefore

23  sufficient because treating physicians have traditionally been called to provide such cost-related

24  testimony. *See* Dkt. No. 52 at 2.

The Court agrees that the providers likely meet the standard as potential expert witnesses regarding the cost of any treatment they provided. Unfortunately, Plaintiff fails to provide any authority for the proposition that he has met his disclosure obligations despite failing to disclose the treating physician's intent to provide cost-related opinion testimony.

Rule 26 is clear that expert witness disclosures must include "the subject matter on which the witness is expected to present evidence . . . and a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). At oral argument, Plaintiff's counsel admitted that the treating physician disclosures were intentionally limited to treatment-related opinions to promote judicial efficiency at trial, although he now argues that he also assumed that the disclosures would be sufficient to allow cost-related testimony. Looking at what was actually included in Plaintiff's amended expert disclosures, Plaintiff expressly discloses his intent to have each of the listed treating physicians testify that Mr. Aldan's injuries and their respective treatments are related to the incident at issue in this case. *See* Dkt. No. 27-2 at ¶¶ 1-9. When the Court compares those disclosures to the summary provided in the same document regarding Dr. Darby's anticipated testimony, specifically that

> Dr. Darby is expected to provide opinion testimony regarding the nature and extent of plaintiff Jeffrey Aldan's injuries. *He will further testify as to the reasonableness and necessity of the medical expenses incurred by plaintiff Jeffrey Aldan for his injuries sustained as a consequence of the incident at issue.* Dr. Darby will testify regarding the reasonableness and necessity of future treatment for said injuries. . . .

(*id.* at ¶ 10) (emphasis added), the Court finds this disclosure consistent with counsel's admission that he made the strategic choice to have only Plaintiff's retained expert, Dr. Darby, testify as to the reasonableness and necessity of Plaintiff's medical expenses. The Court therefore rejects Plaintiff-counsel's post-hoc justification for failing to otherwise meet the disclosure requirements for the treating physicians to testify on the cost-related subject matter.

1    Consequently, the Court finds that Plaintiff failed to disclose the treating physicians'

2 intent to testify as to the reasonableness or necessity of the expenses charged for their services

3 pursuant to Rule 26(a)(2)(C).

4                              (2)      Dr. Darby's Expert Reports

5          Defendant also takes issue with Dr. Darby's ability to provide opinion testimony as to

6 medical costs because he does not include any cost-based opinions in either of his disclosed

7 expert reports. Dkt. Nos. 28 at 6; 27-3 at 8-34. Plaintiff's disclosure obligations for Dr. Darby, as

8 a retained expert, include the production of "a written report—prepared and signed by the

9 witness . . . . [that] must contain [in relevant part]: (i) a complete statement of all opinions the

10 witness will express and the basis and reasons for them; (ii) the facts or data considered by the

11 witness in forming them; [and] (iii) any exhibits that will be used to summarize or support

12 them . . . ." Fed. R. Civ. P. 26(a)(2)(b). Plaintiff also has a duty to supplement the report to

13 correct any deficiency by no later than "the time the party's pretrial disclosures under Rule

14 26(a)(3) are due." *Id.* at 26(e)(2). At oral argument, Plaintiff's counsel acknowledged that Dr.

15 Darby did not include any discussion of medical costs in either of his expert reports. Instead,

16 Plaintiff provided a supplemental declaration from Dr. Darby—as an exhibit in support of his

17 opposition to summary judgment—in which Dr. Darby provides the cost-related information

18 missing from his previous reports. Dkt. No. 27-4. Plaintiff further notes that, despite the deficient

19 expert reports, he disclosed Dr. Darby's intent to testify as to the reasonableness and necessity of

20 medical expenses as early as December 2021. Dkt. No. 26 at 5 (citing Dkt. No. 27-2). Defendant

21 asks the Court to strike Dr. Darby's declaration as an impermissible untimely supplement of

22 Plaintiff's required disclosures. Dkt. No. 28 at 3-5.

23          The Court finds that Plaintiff's counsel clearly failed to properly disclose Dr. Darby's

24 cost-related opinions. Thus, Plaintiff has failed to meet his expert witness disclosure obligations

for any expert witness to testify as to the reasonableness and necessity of Mr. Aldan's past medical costs. *See* Fed. R. Civ. P. 26(a)(2)(B),(C).

The question the Court must now answer is what is the appropriate sanction, if any, for Plaintiff's deficient disclosures.

### (3)    Sanction for Deficient Disclosures

"If a party fails to provide information . . . required by Rule 26(a) or (e), the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). At oral argument, Defendant asserted that exclusion is an automatic sanction, and the Court is precluded from applying either the substantial justification or harmless error exception because Plaintiff did not expressly request any exception or identify a potential lesser sanction in his opposition briefing. Defendant's position misstates the Court's discretion in assessing potential Rule 37(c) sanctions. "The automatic nature of the rule's application does not mean that a district court must exclude evidence . . . . Rather, the rule is automatic in the sense that a district court *may* properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless." *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (emphasis original). Generally, the Court has wide latitude in determining an appropriate sanction under Rule 37(c)(1), even if the sanctioned party fails to request a specific lesser sanction. *See id.* (discussing the scope of a district court's discretion to automatically apply the exclusion sanction when the party being sanctioned fails to argue harmless error or request a lesser sanction).

Here, the Court recognizes that it *could* automatically exclude all cost-related testimony from the disclosed expert witnesses because Plaintiff failed to expressly argue the harmlessness exception or request a lesser sanction in opposition to the motion for summary judgment. On the other hand, the Court notes that Plaintiff nonetheless evinced sufficient factual details to flag the

1    issue for the Court. Thus, the Court was able to raise the issue at oral argument and hear the

2    Parties' respective positions.

3         As for the disclosed treating physicians, the Court finds that Plaintiff's failure to include

4    cost-related subject matter in his disclosures cannot be saved by the substantial justification or

5    harmless error exceptions. Plaintiff's counsel admitted that the subject matter was intentionally

6    excluded from the disclosures for efficiency reasons. Discovery proceeded accordingly. Thus,

7    the Court cannot now accept counsel's post-hoc justifications or find that it would be harmless to

8    allow the treating physicians to testify on this subject matter. The Court therefore ORDERS that

9    the disclosed treating physicians are excluded from providing cost-related testimony per

10   Rule 37(c)(1).

11        The circumstances regarding Dr. Darby's cost-related testimony are different. There is no

12   question that Defendant was aware of Plaintiff's intent to provide cost-related testimony through

13   Dr. Darby in advance of receiving his deficient supplemental report in July 2022. *See* Dkt.

14   No. 27-2 at 5. Defendant also had prior notice of all the expenses that Plaintiff might claim. *See*

15   Dkt. No. 27-1; *see also* Dkt. No. 28 at 7 (acknowledging in reply that Plaintiff has produced

16   medical bills in discovery). Defendant argues that it had no duty to review prior disclosures and

17   instead relied on Dr. Darby's written reports in preparing its deposition strategy. When asked at

18   the hearing about being allowed to re-depose Dr. Darby, Defendant argued that any expansion of

19   the discovery period to correct Plaintiff's disclosure error would necessitate further delay in

20   resolving the case, and Defendant would incur additional expenses in preparing to rebut and

21   defend against the expanded testimony. Defendant therefore argues that it would be unfairly

22   prejudiced by any sanction short of exclusion. The Court finds that any such prejudice is easily

23   ameliorated.

24

1   The Court acknowledges that this case has been pending for more than two years, but all

2   previous delays and continuances were mutually agreed upon by both Parties, and it is unclear

3   how any further delay now prejudices Defendant more than Plaintiff.[2] Additionally, at oral

4   argument, Plaintiff's counsel conceded that the Court could potentially shift to Plaintiff the costs

5   Defendant may incur due to his disclosure error as an alternate to the harsh penalty of exclusion

6   of such vital testimony. The Court is further guided by the principal that actions should be

7   decided on the merits where possible, and the public interests of justice and the search for truth

8   outweigh deciding such issues on technicalities. *See Torres v. Oakland Scavenger Co.*, 487 U.S.

9   312, 316 (1988) (citing *Foman v. Davis*, 371 U.S. 178 (1962); *see also In re*

10  *Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1248 (9th Cir. 2006)

11  ("Fundamentally, the []plaintiffs' delay in providing information they had already given did not

12  cause prejudice sufficient to warrant dismissal (as opposed to a different kind of sanction),

13  especially in view of the public policy favoring resolution on the merits.").

14  Given the facts in this case, the Court excuses the untimely supplementation of Dr.

15  Darby's expert reports as harmless and DENIES Defendant's motion to strike Dr. Darby's

16  supplemental declaration (Dkt. No. 27-4). The Court shall extend the discovery period for the

17  following limited purposes: (1) allowing Defendant additional time to depose Dr. Darby

18  regarding his newly disclosed cost-related testimony, at Plaintiff's expense; (2) allowing

19  Defendant to submit an expert rebuttal report if they wish, and (3) allowing Plaintiff an

20  opportunity to depose the rebuttal expert. The Court will entertain a motion for costs by

21

22

23  [2] The Court also considers the unique circumstances of this case necessitating deferral of ruling on certain issues in
    this motion per Rule 56(d) (*see infra* §§ III.A.2.b, B) as further reducing the magnitude of any prejudice to
24  Defendant of allowing a limited expansion of the discovery period.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
DAMAGES AND GRANTING PLAINTIFF'S MOTION FOR CONTINUANCE - 11

1    Defendant upon its submission of an accounting of the logistical expenses for re-deposing

2    Dr. Darby.

3          Consequently, the Court finds that Plaintiff has presented sufficient evidence to survive

4    summary judgment as to past medical costs. Defendant's motion as to these damages is DENIED

5    with leave to re-file, but only with regard to any arguments that may arise due to the additional

6    discovery of Dr. Darby and if appropriate.

7                **b.**     ***Future Medical Treatment and Costs***

8          To sustain a claim for future medical damages, Plaintiff bears the burden of showing that

9    any future medical treatment "is reasonably certain to be necessarily incurred" and "will be

10   necessitated by the injury suffered." *Leak v. U.S. Rubber Co.*, 511 P.2d 88, 92 (Wash. Ct.

11   App. 1973). Defendant challenges Plaintiff's intention of seeking damages for future treatment

12   recommended by Dr. Darby, his retained medical expert in occupational medicine. Dkt. No. 26

13   at 7. Specifically, Dr. Darby recommended the following treatment beyond what Plaintiff had

14   received by July 2022 when Dr. Darby prepared his supplemental report: (1) annual evaluation

15   by an orthopedic surgeon, (2) post-surgical physical and pool therapy, (3) ongoing mental health

16   support indefinitely. Dkt. No. 27-3 at 22. Defendant argues that Dr. Darby's expert report and

17   deposition testimony is not specific enough to "provide a reasonable basis for estimating" how

18   much damages to award. Dkt. No. 28 at 6. This argument puts the cart before the horse.

19         To survive summary judgment as to a claim for future medical damages, Plaintiff need

20   only raise a genuine dispute of fact as to whether future treatment "is reasonably certain to be

21   necessarily incurred" and "will be necessitated by the injury suffered." *Leak*, 511 P.2d at 92.

22   Dr. Darby's reports and testimony provide sufficient "facts showing that there is a genuine issue

23   for trial" as to whether Plaintiff may pursue damages for future treatment. *Ricci*, 557 U.S. 586

24   (internal quotation and citation omitted).

1    Plaintiff need not rely on Dr. Darby's testimony to establish the amount of future

2 damages that should be awarded. Unlike past medical costs, expert testimony is not required to

3 allow a jury to determine the amount of future damages to award once the necessity of future

4 treatment is established. *See Bitzan v. Parisi*, 558 P.2d 775, 778-79 (Wash. 1977) (en banc)

5 (concluding in a personal injury suit that "a future damage instruction can be given even though

6 there is no medical testimony"); *Erdman v. Lower Yakima Valley, Washington Lodge No. 2112*

7 *of B.P.O.E.*, 704 P.2d 150, 157 (Wash. Ct. App. 1985) ("Once liability for damages is

8 established, a more liberal rule is applied when allowing assessment of the damage amount.").

9 Here, Plaintiff notes that he has presented evidence of medical bills for past similar treatments

10 that can be used to show the likely expenses that will be incurred for any future treatments. Dkt.

11 No. 26 at 7. "[M]edical records and bills [are] admissible . . . without a showing of

12 reasonableness and necessity[] to prove costs of future treatment." *Patterson*, 929 P.2d at 1131

13 (citing *Erdman*, 704 P.2d at 157).

14    The Court therefore finds that Plaintiff has presented sufficient evidence to survive

15 summary judgment as to future medical treatment and costs. Defendant's motion as to these

16 damages is DENIED.[3]

17    2.    **Wage-Based Damages**

18    Defendant challenges Plaintiff's claims for (1) past wage loss and (2) loss of future

19 earning capacity. Dkt. No. 26 at 11-13.

20

21

22

23

24

---

[3] Defendant takes issue with the lack of specificity regarding the potential future damages being sought. The Court addresses Plaintiff's evidentiary issues regarding his treatment status in conjunction with his motion to continue below in Section III.B.

1      a.    ***Past Wage Loss***

2      Defendant argues that Plaintiff failed to "disclose an expert competent to testify" as to his

3 lost wages. Dkt. No. 24 at 11. Plaintiff notes that his only claim for past wage loss relates to his

4 April 2022 hip surgery and subsequent recovery. Dkt. No. 26 at 8. Plaintiff clarifies that he does

5 not intend to pursue past wage damages for any other period, but because Plaintiff has not yet

6 been cleared to return to work post-surgery, the full extent of his potential surgery-related wage

7 claim in not yet known. *Id.* Defendant concedes that Plaintiff has provided wage related evidence

8 (such as paystubs and tax returns). Dkt. No. 28 at 8. This evidence appears to show Plaintiff's

9 regular income during the months leading up to his surgery. *See* Dkt. 27-9.

10      The fact that Plaintiff ended up having surgery in April could not be a surprise to

11 Defendant, as the Parties, as early as December 2021, mutually agreed to continue the previously

12 scheduled trial and related dates in part because "Plaintiff continues to receive care and treatment

13 for his incident-related injuries and [was] scheduled to be evaluated in January 2022 by an

14 orthopedic surgeon." Dkt. No. 18 at 2. The Parties again agreed to extend case deadlines "so

15 experts on both sides will have the benefit of the additional treatment records from Plaintiff's

16 surgery and post-op follow up." Dkt. No. 22 at 2.

17      Defendant appears to argue that Plaintiff must produce an expert who can competently

18 testify as to the calculation of wages lost in relation to the surgery but does not provide any

19 authority to support this proposition. Plaintiff argues that his orthopedic surgeon, Dr. King, is

20 sufficiently competent to testify as to the reasonableness and necessity of the surgery and the

21 post-surgery recovery period, as well as the post-surgical conditions that have kept Plaintiff from

22 being able to return to work until medically released. Dkt. No. 26 at 8-9. Plaintiff argues that

23 once the total amount of time off work due to the surgery is known, the related loss calculation

24

1   would be a simple calculation based on the paystub evidence. *Id.* at 9. The Court fails to see why

2   an expert would be needed for such a calculation.

3       Consequently, the Court finds that Plaintiff has produced sufficient facts to allow his

4   claim for surgery related wage loss damages to proceed and DENIES Defendant's request for

5   summary judgment on this issue.

6               b.      ***Loss of Future Earning Capacity***

7       Defendant argues that Plaintiff has presented no evidence to support a potential claim for

8   future wage loss or loss of future earning capacity. Dkt. No. 24 at 12-13. Defendant points to the

9   fact that Plaintiff continued to work full-time after being injured, at least until his surgery in

10  April 2022, to argue that Plaintiff will be unable to establish lost capacity. *Id.* Plaintiff responds

11  that he had to have surgery and has not yet been medically cleared to return to work. Dkt. No. 26

12  at 9. In his post-surgery report, Dr. Darby opines that Plaintiff "has a permanent partial

13  impairment of the left lower extremity," and estimates him to be 20% impaired. Dkt. No. 27-6

14  at 5. Dr. Darby also recommends a "functional capacities evaluation" to determine if he can

15  continue in his current occupation. *Id.* Plaintiff asserts that such an evaluation would be

16  premature before Plaintiff is medically cleared to resume working. Dkt. No. 26. at 9.

17      Defendant argues there is insufficient evidence from which a trier-of-fact can determine

18  the extent of Plaintiff's future work capacity. "Proof of [disability and lost earnings] as late as at

19  time of trial even though subjective in character [may] warrant an instruction on future

20  damages." *Bitzan*, 558 P.2d at 778. Thus, the lack of specificity as to what future damages may

21  be recovered does not necessarily prohibit a future-damages claim as a matter of law at this

22  stage. Additionally, Plaintiff's lack of evidence stems more from his need for ongoing treatment

23  than from a lack of diligence on Plaintiff's part. As an alternative to dismissal, Plaintiff requests

24  the Court exercise its discretion to defer ruling on a request for summary judgment when facts

1    essential to the nonmoving party's opposition are unavailable. Dkt. No. 26 at 10 (citing Fed. R.

2    Civ. P. 56(d)). Given the unique circumstances here, the Court finds sufficient cause to defer

3    ruling on Defendant's motion as to future wage-related damages per Rule 56(d) to allow Plaintiff

4    an opportunity for his medical condition to stabilize enough to determine his future work

5    capacity.

6            3.       **Other Economic Damages**

7            Defendant argues that Plaintiff has presented no evidence to support a claim for any other

8    economic damages. Dkt. No. 24 at 13. Plaintiff does not address this issue in his response. As

9    such, the Court finds it appropriate to GRANT Defendant's request for summary judgment as to

10   any claim for economic damages that Plaintiff has not yet disclosed.

11   **B.      Motion for Continuance and to Amend the Trial Schedule**

12           Plaintiff notes that Mr. Aldan has not been released from post-operative care related to

13   his hip surgery in April 2022. Dkt. No. 54 at 1. While at least some of the post-surgery related

14   therapies recommended by Dr. Darby have already been completed and will no longer be

15   considered in the calculation of potential future medical expenses (Dkt. No. 26 at 6, n.1),

16   Plaintiff has not fully recovered as expected. Dkt. No. 54 at 2.

17           When asked at oral argument about Plaintiff's post-operative treatment status, Plaintiff's

18   counsel stated that Mr. Aldan's condition has not completely stabilized, and there is a possibility

19   that additional surgery may be required before Plaintiff is determined to have reached maximum

20   medical improvement. Based on these unique circumstances, and the shifting nature of

21   potentially related damages, Plaintiff has requested that the Court continue the trial and amend

22   the scheduling order to allow more time for Plaintiff's condition to stabilized. Dkt. No. 54, *see*

23   *also* Dkt. No. 26 at 10 (arguing for a Rule 56(d) deferral on the issue of future damages). In his

24   motion for continuance, Plaintiff estimates an additional six months is needed for his medical

1   condition to stabilize enough to determine his future medical needs and work capacity. *See* Dkt.

2   No. 54 at 3-4. Defendant opposes any further delay and notes that damages will eventually have

3   to be fixed, suggesting that granting Plaintiff's request will encourage Plaintiff to continue

4   delaying trial to amass potential damages indefinitely. Dkt. No. 56 at 1-8. Defendant further

5   argues that amending the schedule as requested by Plaintiff and extending the discovery period

6   without restriction would unfairly allow Plaintiff to correct previous disclosure errors. *Id.*

7   at 8-10.

8          While the Court is sensitive to the amount of time that has passed since this litigation

9   began, Defendant has previously agreed to continue this case for similar reasons, which is to say,

10  this is Plaintiff's first *opposed* motion for a continuance. At this point, there is no evidence that

11  Plaintiff has acted in bad faith in terms of his pursuit of treatment. It is not Plaintiff's fault that

12  his medical providers have not released him from care or to return to work.

13         As such, the Court finds good cause to allow Mr. Aldan sufficient time to complete his

14  current round of anticipated treatment and evaluation.[4] *See* Dkt. No. 54. Consistent with the

15  Court's finding of sufficient cause to defer ruling on Defendant's motion as to future earning

16  capacity per Rule 56(d), the Court GRANTS Plaintiff's request for continuance and will separately

17  enter an amended case management schedule consistent with this order.

18         This ruling does not give Plaintiff *carte blanche* to correct his previous disclosure

19  deficiencies. The Court will reopen discovery limited to Plaintiff's ongoing post-operative care

20  and determination of future work capacity only. Plaintiff may supplement prior productions,

21  interrogatories, and disclosures as required by the rules, but discovery related to any other issue

22

23  ───────────────────────
    [4] That said, the Court accepts Plaintiff-counsel's description of Mr. Aldan's remaining care to mean that this will be
    the final delay needed to sufficiently clarify Plaintiff's damages claims for trial. Any future request for continuance
24  will be met with extreme skepticism and will require a much more significant showing of good cause to succeed.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON
DAMAGES AND GRANTING PLAINTIFF'S MOTION FOR CONTINUANCE - 17

for trial, including past medical treatment and costs (other than that discussed in

Section III.A.1.a.3) or other economic damages amassed up to the previous deadlines, remains

closed.

## IV.   CONCLUSION

Consequently, the Court ORDERS as follows:

1. Defendant's Motion for Partial Summary Judgment on Damages (Dkt. No. 24) is

   GRANTED IN PART and DENIED IN PART.

   a. The Court GRANTS summary judgment as to any previously undisclosed

      economic damages.

   b. The Court DENIES summary judgment as to Plaintiff's claims for past medical

      costs, future medical costs and treatment, and past wage loss.

   c. The Court defers ruling on Defendant's request for summary judgment as to

      Plaintiff's claims for future wage loss and loss of earning capacity per

      Rule 56(d). The Court will terminate Defendant's motion, but Defendant is

      GRANTED leave to renew its motion on this issue at the close of the extended

      discovery period, if appropriate.

2. Plaintiff's Motion to Continue Trial and Amend the Case Schedule (Dkt. No. 54) is

   GRANTED.

   a. The Court will reset the trial date and enter an amended case schedule in a

      separate order.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

     b.   The extended discovery period and reset disclosure and motion deadlines are limited to: (i) Dr. Darby's opinions regarding Plaintiff's past medical expenses; and (ii) Plaintiff's ongoing post-operative care and determination of future work capacity only.

Dated this 16th day of December 2022.

Tana Lin
United States District Judge