1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JEFFREY S ALDAN,

            Plaintiff,

    v.

HOME DEPOT USA INC, d/b/a The Home
Depot #4720, a foreign corporation,

            Defendant.

CASE NO. 3:20-cv-05694-TL

ORDER ON MOTIONS TO
EXCLUDE AND RENEWED
MOTION FOR PARTIAL SUMMARY
JUDGMENT

    This is a suit for damages against Defendant Home Depot USA, Inc. ("Home Depot"),

from personal injuries Plaintiff Jeffrey Aldan allegedly sustained when he was struck by a cart in

the parking lot of a Home Depot store. Dkt. No. 1-1. This matter is before the Court on the

Parties' cross-motions to exclude expert testimony (Dkt. Nos. 29, 31, 32, 63, 64) and Home

Depot's renewed motion for partial summary judgment (Dkt. No. 65). Having considered the

Parties' briefing and the relevant record,[1] the Court hereby DENIES the Parties' respective

---

[1] The Parties did not request oral argument related to any of the now pending motions, and the Court finds that oral argument is not necessary. *See* LCR 7(b)(4).

motions to exclude, except to the limited extent GRANTED below, and DENIES the renewed motion for partial summary judgment.

## I.    BACKGROUND

This case arises from an incident that occurred in November 2017, when Mr. Aldan was struck by a cart while standing in the parking lot of a Home Depot store. Dkt. No. 1-1. Mr. Aldan claims that he sustained injures due to the negligence of Home Depot employees acting within the scope of their employment. *Id.* Mr. Aldan seeks "all special and economic damages suffered by the plaintiff." *Id.* Home Depot previously moved for partial summary judgment challenging several categories of damages sought by Mr. Aldan. Dkt. No. 24. The Court granted in part and denied in part Home Depot's motion. Dkt. No. 57 at 18. Due in large part to Mr. Aldan's ongoing medical treatment needs, the Court also (1) deferred ruling on Defendant's request for summary judgment as to Plaintiff's claims for future wage loss and loss of earning capacity; (2) extended the discovery period and reset expert disclosure and discovery motion deadlines to allow for additional discovery limited to Plaintiff's past medical expenses and future work capacity as specified in the order; and (3) granted Defendant leave to renew its summary judgment motion on the unresolved issues of future wage loss and loss of earning capacity. *Id.*

While the prior summary judgment motion was pending, the Parties cross-filed motions to exclude opposing-party expert testimony. Mr. Aldan moved to exclude the testimony of Bradley Probst, a biomechanical expert retained by Home Depot. Dkt. No. 31. Home Depot moved to exclude certain opinions of Jason King, M.D., one of Mr. Aldan's treating physicians. Dkt. No. 29. Home Depot also moved to exclude certain opinions offered by Paul Darby, M.D., a retained occupational medicine specialist. Dkt. No. 32. Within the extended discovery period, Home Depot filed a renewed motion to exclude opinions of Dr. Darby, including newly disclosed opinions related to the limited additional discovery. Dkt. No. 63. It also moved to

exclude the opinions of a newly disclosed medical expert involved in Mr. Aldan's ongoing

medical treatment. Dkt. No. 64. Finally, Home Depot has renewed its motion for partial

summary judgment pursuant to the Court's prior order. Dkt. No. 65. All of the pending motions

have been fully briefed.

After setting out the relevant legal standards, the Court will address each motion in turn.

## II.    LEGAL STANDARDS

### A.    Motions to Exclude Experts Under *Daubert*

"Before admitting expert testimony into evidence, the district court must perform a

gatekeeping role of ensuring that the testimony is both relevant and reliable" pursuant to Federal

Rule of Evidence ("FRE") 702. *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th

Cir. 2019) (internal quotation marks omitted) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509

U.S. 579, 597 (1993)). Under FRE 702, "[a] witness who is qualified as an expert by knowledge,

skill, experience, training, or education may testify" if:

> (a) the expert's scientific, technical, or other specialized knowledge
> will help the trier of fact to understand the evidence or to determine
> a fact in issue; (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> and (d) the expert has reliably applied the principles and methods to
> the facts of the case.

Fed. R. Evid. 702. The reliability inquiry "requires that the expert's testimony have a reliable

basis in the knowledge and experience of the relevant discipline." *Id.* at 1188–89 (internal

quotation marks omitted) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)). If

an expert's opinion is found to be reliable, however, "[v]igorous cross-examination, presentation

of contrary evidence, and careful instruction on the burden of proof are the traditional and

appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 592, 596.

1    **B.      Motion for Summary Judgment**

2           Summary judgment is appropriate where "the movant shows that there is no genuine

3    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

4    Civ. P. 56(a). At this stage, the Court does not make credibility determinations, nor does it weigh

5    the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Munden v.*

6    *Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). The inquiry turns on "whether the

7    evidence presents a sufficient disagreement to require submission to a jury or whether it is so

8    one-sided that one party must prevail as a matter of law." *Id.* at 251–52. A genuine triable issue

9    of material fact exists where "the evidence is such that a reasonable jury could return a verdict

10   for the nonmoving party." *Id.* at 248; *see also McSherry v. City of Long Beach*, 584 F.3d 1129,

11   1135 (9th Cir. 2009) (explaining that this is the inquiry at the summary judgment stage,

12   "[s]tripped to its core"). Additionally, "all justifiable inferences" must be drawn in the

13   non-movant's favor, *id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59

14   (1970)), "only in the sense that, where the facts specifically averred by [the non-moving] party

15   contradict facts specifically averred by the movant, the [summary judgment] motion must be

16   denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

17          Under Federal Rule of Civil Procedure ("FRCP") 56, to establish that a fact cannot be

18   genuinely disputed, the movant can either cite the record or show "that the materials cited do not

19   establish the . . . presence of a genuine dispute, or that an adverse party cannot produce

20   admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Once the movant has made

21   such a showing, "its opponent must do more than simply show that there is some metaphysical

22   doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

23   574, 586 (1986) (internal citation omitted); *see also Liberty Lobby*, 477 U.S. at 252 (specifying

24   that the non-movant "must show more than the mere existence of a scintilla of evidence");

1    *accord In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). The non-movant

2    "bears the burden of production under [FRCP] 56 to 'designate specific facts showing that there

3    is a genuine issue for trial.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex*

4    *Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The Court will enter summary judgment "against a

5    party who fails to make a showing sufficient to establish the existence of an element essential to

6    that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S.

7    at 322 (1986); *see also Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 798, 805 (9th

8    Cir. 2010), *cert. denied*, 563 U.S. 1008 (affirming grant of summary judgment against appellant

9    who had "failed to adduce any evidence or authority to support her claim").

10                                 **III.    DISCUSSION**

11   **A.    Home Depot's Motion to Exclude Expert Opinions of Dr. Jason King**

12           Jason King, M.D., is a board-certified orthopedic surgeon retained to provide medical

13   expert testimony related to Mr. Aldan's lawsuit.[2] Dkt. No. 43 at 2. Dr. King was included in

14   Plaintiff's amended expert disclosure produced on July 8, 2022, which was the prior expert

15   disclosure deadline. Dkt. No. 30 at 6–8; *see also* Dkt. No. 23. On August 15, Plaintiff produced a

16   signed declaration from Dr. King that included all required elements for an expert report under

17   the discovery rules, except for a testimony list. Dkt. No. 43 at 2; *see also* Dkt. No. 30 at 38–59;

18   Fed. R. Civ. P. 26(a)(2)(B). Home Depot now moves to exclude Dr. King as a discovery sanction

19   because of the untimely disclosure of Dr. King's expert report. Dkt. No. 29 at 9.

20

21

22

23   _____
[2] The Court notes that Plaintiff characterizes Dr. King as "one of [Mr. Aldan's] treating providers," but does not
24   dispute that a written report was required per FRCP 26(a)(2)(B), which applies only to experts specifically retained
     to provide testimony in the case at bar. Dkt. No. 43 at 2.

1       1.      **Home Depot's untimely discovery motion.**

2               Home Depot's motion to exclude Dr. King as an expert was filed on October 14, 2022

3       (*see* Dkt. No. 29), the date set by the Court for the Parties to file motions challenging each

4       other's "expert witness *testimony*" (*see* Dkt. No. 23) (emphasis added). Significantly, Home

5       Depot does not challenge Dr. King's status as an expert under FRE 702 or *Daubert*, or his

6       testimony; Home Depot filed a discovery motion seeking sanctions under FRCP 37 for

7       Plaintiff's late disclosure per FRCP 26. Dkt. No 29 at 8–10. However, the Court's deadline for

8       discovery related motions was September 9, 2022. *See* Dkt. No. 23. Home Depot's attempt to

9       cloak an untimely discovery motion in the guise of a motion to exclude is not well received by

10      the Court.

11              To pursue its untimely discovery motion, Home Depot must show good cause for relief

12      from the Court-ordered deadline per FRCP 16. *See Johnson v. Mammoth Recreations, Inc.*, 975

13      F.2d 604, 610 (9th Cir. 1992) ("A scheduling order is not a frivolous piece of paper, idly entered,

14      which can be disregarded by counsel without peril." (citation and internal quotation marks

15      omitted)). Home Depot does not attempt to show good cause for failing to file their belated

16      discovery motion, nor does the Court find that good cause can be established on the facts

17      presented. Home Depot received the belated disclosure on August 15, nearly a month before the

18      discovery motion deadline and nearly two months before the discovery cutoff date. *See* Dkt.

19      No. 23. Instead of calling attention to the delayed report, Home Depot waited until October 14,

20      the day discovery closed and motions to exclude experts were due (*id.*), to seek a sanction. Home

21      Depot offers no cogent argument to excuse this delay in seeking to remedy Plaintiff's discovery

22      violation.

23              While the Court acknowledges that this is not the only example of Plaintiff-counsel's

24      apparent mismanagement of his discovery obligations (*see* Dkt. No. 57 at 6–12), the Court

nonetheless finds that Home Depot lacks good cause for delaying in seeking sanctions on this issue.

> ### 2. **The delayed disclosure was essentially harmless and any prejudice to Home Depot could have been remedied prior to the end of discovery.**

Home Depot argues that Plaintiff's late disclosure warrants a "self-executing automatic sanction," pursuant to FRCP 37(c)(1). Dkt. No. 29 at 1. In opposition to Home Depot's untimely discovery motion, Plaintiff argues that sanctions are not warranted because the delayed disclosure was essentially harmless. Dkt. No. 43 at 3–4. FRCP 37 calls for the imposition of sanctions for failing to provide information as required by FRCP 26(a) "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court finds the belated disclosure was harmless.

Home Depot cites *Torres v. City of L.A.*, 548 F.3d 1197 (9th Cir. 2008), for the proposition that "[c]ourts have consistently held that a party is not required to articulate how they would be prejudiced by the other party's failure to disclosure [sic]." Dkt. No. 47 at 3. However, Home Depot leaves out a critical fact from *Torres*: the offending party there did not provide an expert report at all. 548 F.3d at 1213.

In any event, the opinions included in Dr. King's untimely disclosed declaration mirror those included in the timely produced amended expert disclosure. *Compare* Dkt. No. 30 at 7 *with id.* at 40. After the late disclosure, Home Depot had nearly a month to prepare a rebuttal report and to seek a remedy under the discovery rules for the late disclosure. Dkt. No. 23. It also had nearly two months to seek additional discovery related to Dr. King's proposed testimony or to seek relief from the discovery or dispositive motion deadlines.[3] *Id.* Whatever prejudice Home

---

[3] Home Depot should have been aware that the Court would consider imposing costs as sanctions for untimely disclosures as it had previously invited Home Depot to file a motion for costs for re-deposing Dr. Darby due to Plaintiff's earlier, untimely supplementation. Dkt. No. 57 at 11–12.

1    Depot may have suffered by the delayed disclosure of Dr. King's expert report, there is no

2    question that it could have been remedied in a timely manner had Home Depot not waited until

3    the deadline to file motions to exclude to seek appropriate relief.

4         For the foregoing reasons, the Court DENIES Home Depot's motion to exclude the expert

5    testimony of Dr. King.

6    **B.    Home Depot's Motion to Exclude Expert Opinions of Dr. Theodore Becker**

7         Home Depot moves to exclude Plaintiff's newly retained functional capacity expert,

8    Theodore J. Becker, Ph.D. ("Dr. Becker"). Dkt. No. 64 at 1. As with its motion to exclude

9    Dr. King, Home Depot does not seek to exclude Dr. Becker's *testimony* but, rather, complains

10   about his faulty *disclosure. Id.* at 5–7. Home Depot seeks exclusion as a discovery sanction,

11   highlighting perceived procedural disclosure failures by Plaintiff during the extended discovery

12   period ordered by the Court. Dkt. No. 64 at 6–7. The Parties also dispute the scope of allowable

13   discovery during the extended discovery period, with Home Depot arguing that Plaintiff was

14   prohibited from retaining and disclosing any new experts. Dkt. No. 64 at 7–8; Dkt. No. 69

15   at 5–6; Dkt. No. 71 at 3–4. According to Home Depot, the Court should therefore prohibit

16   Dr. Darby from relying on Dr. Becker's reports and opinions in any of his anticipated expert

17   testimony at trial. Dkt. No. 64 at 8.

18        Home Depot's request for FRCP 37 sanctions is essentially moot, as Plaintiff concedes

19   that he does not intend to call Dr. Becker as a witness at trial. Dkt. No. 69 at 4. Further, the Court

20   notes that Home Depot again waited until after the extended deadline for discovery motions and

21   until the close of the extended discovery period to file its discovery motion disguised as a

22   challenge to the newly retained expert. Dkt. No. 64; *see also supra,* § III.A.1. Home Depot sat on

23   the alleged disclosure violation for three months—during which time the relatively minor error

24   could have been easily cured—but then requests the harsh remedy of complete exclusion. Again,

1   Home Depot does not even attempt to show good cause for failing to raise the discovery dispute

2   by the discovery motion deadline.

3        As for the dispute regarding the scope of the extended discovery period, Home Depot

4   misinterprets the Court's prior order. While the Court limited the extended discovery period, in

5   part, to the issue of "Plaintiff's ongoing post-operative care and determination of future work

6   capacity," the Court in no way intended to limit the type of discovery this might entail. Dkt.

7   No. 57 at 17. The Court specified that while Plaintiff was allowed to "supplement prior

8   productions, interrogatories, and disclosures . . . discovery related to any other *issue*" was

9   prohibited. *Id.* (emphasis added). This statement did not limit the type of discovery allowed, only

10  the subject matter that any new discovery was allowed to address. *Id.* This is consistent with the

11  Court's admonition that Plaintiff could not use the extended discovery period to cure through

12  supplementation prior discovery deficiencies highlighted in the order (*e.g.*, the scope of

13  testimony of previously disclosed treating physicians related to past medical costs). *See id.*

14  at 6–7. Allowing discovery related to new experts is also consistent with the Court resetting the

15  expert disclosure related deadlines. Dkt. No. 58. Here, Dr. Becker was specifically retained to

16  provide discoverable evidence regarding Mr. Aldan's future work capacity as contemplated by

17  the Court's prior order.

18       Home Depot's argument that Dr. Darby should be prohibited from relying on

19  Dr. Becker's report is based on the premise that Dr. Becker's retention was beyond the scope of

20  discovery allowed during the extended discovery period. Home Depot is wrong on that point.

21  Home Depot also attempts to argue that it would be prejudiced because there would be no

22  opportunity to cross-examine Dr. Becker regarding his report. Dkt. No. 71 at 4–5. This argument

23  is a red herring. Dr. Darby is allowed to base his opinions "on facts or data in the case that the

24  expert has been made aware of," which includes Dr. Becker's report. Fed. R. Evid. 703.

1   Dr. Becker's report "need not be admissible" for Dr. Darby to form an opinion from it. *Id.* Since

2   Dr. Darby will be subject to direct and cross-examination, Home Depot will have an opportunity

3   to challenge whether Dr. Becker's report provides facts or data on which experts in Dr. Darby's

4   field reasonably rely to support his opinion. *See id.* Credibility determinations regarding

5   Dr. Darby's testimony are the rightful domain of the jury. *Daubert*, 509 U.S. at 596. The Court

6   further notes that Home Depot could have deposed Dr. Becker during the extended discovery

7   period and could have submitted Dr. Becker's report to its own experts in preparation of rebuttal

8   of Dr. Darby's supplemented opinions. Dkt. No. 57 at 15–19. Thus, the Court sees no reason to

9   preemptively prohibit Dr. Darby from relying on Dr. Becker's report in forming opinions

10   regarding Mr. Aldan's future work capacity.

11       For the foregoing reasons, the Court DENIES Home Depot's motion to exclude testimony

12   related to or supported by Dr. Becker's report.

13   **C.   Home Depot's Motions to Exclude Expert Opinions of Dr. Darby**

14       Paul Darby, M.D., is a board-certified occupational medicine expert retained to provide

15   expert testimony, including testimony regarding medical causation and damages. Dkt. No. 68

16   at 1–2. Home Depot initially moved to exclude Dr. Darby's opinions regarding the mechanism of

17   injury and medical causation.[4] Dkt. No. 32 at 7–12. That motion remains pending before the

18   Court. At the conclusion of the extended discovery period, Home Depot filed a renewed motion

19   to exclude Dr. Darby's opinions. Dkt. No. 63. The renewed motion appears to repeat the

20   previous motion's arguments for excluding Dr. Darby's testimony regarding the mechanism of

21

22   _____

[4] Home Depot also requested the exclusion of a declaration from Dr. Darby submitted in opposition to its summary judgment motion as an improper attempt by Plaintiff to supplement Dr. Darby's expert report after the close of discovery by reference to a motion to strike included in the summary judgment briefing. Dkt. No. 32 at 7–12. This issue was addressed in the Court's prior order on summary judgment. Dkt. No. 57 at 9–12 (finding the untimely supplementation harmless in light of the extended discovery period).

injury and medical causation, but then adds new arguments to exclude Dr. Darby's opinions regarding Mr. Aldan's future functional work capacity and need for future mental and behavioral health treatment. *Id.* at 6–13.

> 1. **Dr. Darby's opinions regarding the mechanism of injury.**

Home Depot challenges Dr. Darby's opinions related to the mechanism of injury because Dr. Darby is not qualified to conduct a biomechanical analysis, did not rely on adequate facts required to conduct a biomechanical analysis, and failed to employ principals and methods required to conduct a reliable biomechanical analysis. Dkt. No. 63 at 6–9. Dr. Darby was not retained as a biomechanical expert and his opinions regarding the nature of Mr. Aldan's injuries are not based on a biomechanical analysis but are based on his expertise as a medical doctor and occupational medicine specialist. Dkt. No. 68 at 6–7. Home Depot fails to contest the counterargument that Dr. Darby is qualified to opine as to the mechanism of injury from his perspective as a medical doctor and occupational medicine specialist, or that Dr. Darby's opinions are derived from reliable facts, data, principals, and methods that are reasonably relied upon in the field of occupational medicine. Dkt. No. 68 at 6–9. At best, Home Depot attempts to undermine the credibility and weight of Dr. Darby's opinions on this point, but that exceeds the scope of the Court's gatekeeping function at this stage. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

> 2. **Dr. Darby's opinions of medical causation.**

For similar reasons, Home Depot's attempts to challenge Dr. Darby's medical causation opinions also fail. As an initial matter, Home Depot does not appear to challenge Dr. Darby's qualifications for providing medical causation opinions. Instead, Home Depot claims that

Dr. Darby's causation opinions are unreliable because he testified at his deposition that he had not reviewed medical history documents (Dkt. Nos. 9–10), which he later admitted were included in the documents he reviewed in preparing his initial reports (Dkt. No. 68 at 9–10). Plaintiff characterizes Dr. Darby's deposition testimony as a simple misstatement and lapse in recollection. *Id.* Home Depot calls into question this characterization by highlighting several instances throughout the deposition where Dr. Darby acknowledged not reviewing the past medical records. Dkt. No. 70 at 2–3. In a subsequent declaration, Dr. Darby acknowledges that he was incorrect in his deposition and that he did in fact receive and review the past medical records before preparing his reports prior to Home Depot's deposition of him. Dkt. No. 42-2 ¶¶ 4–6. Dr. Darby's declaration clarifies the scope of records he received and reviewed in preparing his reports. *Id.* He also testified during his deposition that he did in fact review medical records that predated the incident, he was aware of at least one prior worker's compensation claim filed by Mr. Aldan, and he was generally aware that Mr. Aldan had preexisting conditions (*see* Dkt. No. 42-1 at 6 (17:1–18:13)).

The Court finds Dr. Darby's opinions to be based on sufficiently reliable grounds to be admissible per FRE 702. While the Court understands that Dr. Darby's inconsistencies on this point may damage his credibility, again, vigorous cross-examination and presentation of rebuttal expert testimony are the more appropriate avenues for attacking Dr. Darby's medical causation testimony. *Daubert*, 509 U.S. at 596.

3. **Dr. Darby's future work capacity opinions.**

Home Depot argues that Dr. Darby should be prohibited from providing work capacity opinions because he did not perform Mr. Aldan's recent functional capacity evaluation and instead solely relies on Dr. Becker's report as the foundation for the opinion that Mr. Aldan can no longer work as a glazer. Dkt. No. 63 at 11–13.

Plaintiff attests that, as an *occupational medicine specialist*, Dr. Darby is generally qualified to make determinations regarding a patient's ability to continue working in a specific occupation based on his general medical training, specific focus in occupational medicine, and experience working with patients in similar trades suffering similar injuries. Dkt. No. 68 at 12–13; *see also* Dkt. No. 27-3 at 24–30. This is not a case where one scientist is offering an opinion from an entirely different scientific or medical specialty, as Home Depot appears to contend. Dkt. No. 70 at 5 (citing *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 612–14 (7th Cir. 2002)).

The contention that Dr. Darby's opinions are based only on Dr. Becker's report is also unsupported by the record. Even prior to Dr. Becker's retention and functional capacity evaluation of Mr. Aldan, Dr. Darby offered medical opinions regarding Mr. Aldan's functional capacity and future work prospects. *See, e.g.*, Dkt. No. 27-6 at 6 (noting "to a reasonable degree of medical probability . . . Mr. Aldan has 20% impairment of the left lower extremity" which could impact his ability to "return to the trade of glazer"). In fact, summary judgment on the question of Mr. Aldan's possible loss of future earning capacity damages was deferred in part because Dr. Darby recommended a "functional capacities evaluation" before he could provide a definitive opinion on the matter (*id.*), which would not have been prudent at the time because, as the Court noted, Mr. Aldan's condition had not yet sufficiently stabilized for him to be "medically cleared to resume working." Dkt. No. 57 at 15–17. There, Dr. Darby previewed the fact that a functional capacity analysis was an additional datapoint upon which his ultimate opinion regarding Mr. Aldan's functional capacity would be based. Dkt. No. 27-6 at 6. Dr. Darby further explained in his September 12, 2022, report that as an occupational medicine specialist, he often works closely with specialists trained in providing functional capacity evaluations. Dkt. No. 27-4 at 4. The Court also denies Home Depot's challenges to Dr. Becker's report and

Dr. Darby's reliance upon it. *See supra*, § III.B. Finally, the Court notes that ultimately, Dr. Darby made his own determination regarding Mr. Aldan's functional capacity limits based upon Dr. Becker's report.[5] Dkt. No. 66-4 at 27.

As an occupational medicine specialist, (1) Dr. Darby is qualified to opine as to how Mr. Aldan's injuries impact his ability to work in his prior occupation; (2) his opinions appear to be based on a reliable foundation, including his own medical evaluations, his specialty training in occupational medicine, his experience treating similarly situated patients, his review of relevant medical records including Mr. Aldan's subjective reports, and Dr. Becker's functional capacities analysis; and (3) his opinions would be helpful to the jury on the question of Mr. Aldan's future work capacity. The Court therefore finds that Dr. Darby's opinions regarding Mr. Aldan's ability to work as a glazer are admissible.

4. **Dr. Darby's opinions regarding the need for indefinite ongoing mental and behavioral health treatment.**

Home Depot challenges Dr. Darby's qualifications to present mental and behavioral health opinion testimony because there is no record of his expertise in this area of medicine. Dkt. No. 63 at 13; Dkt. No. 70 at 7. Plaintiff counters that, as an occupational medicine specialist, Dr. Darby's practice and practical experience includes consideration, diagnosis, and recommendation for treatment of metal and behavioral health issues related to "conditions associated with drastic changes to [a] patient's [life]" arising from work limiting injuries. Dkt. No. 68. If true, then Dr. Darby's opinions, based on his own examination of Mr. Aldan, his review of Mr. Aldan's mental and behavioral health history, and his understanding of the "mental and emotional conditions" Mr. Aldan faces since suffering his injuries, would likely be

---

[5] Home Depot also highlights inconsistencies between Dr. Darby's opinion and the conclusions of Dr. Marchant, one of Mr. Aldan's treating physicians, regarding Mr. Aldan's work capacity (Dkt. No. 63 at 11), but that again goes to the weight and credibility of Dr. Darby's opinions, which are best attacked on cross-examination.

admissible per FRE 702. Unfortunately, Plaintiff's assertions regarding the scope of Dr. Darby's practice and medical expertise are presented without citation to any admissible evidence in the record to support the proposition that Dr. Darby is qualified to provide the relevant mental and behavioral health opinions he offers.

The Court's gatekeeping function, at this stage, requires more than the Plaintiff's bare assertions regarding Dr. Darby's qualifications. That said, if the assertions regarding Dr. Darby's background, training, and experience in addressing his patients' mental and behavioral health concerns as part of his specialized practice in occupational medicine, were supported by admissible evidence, including at a minimum Dr. Darby's own sworn testimony, then the Court would be able to make a determination regarding Dr. Darby's qualifications to provide the challenged testimony. In any event, the Court has no doubt that such testimony would be helpful to the jury in determining the scope and extent of Mr. Aldan's potential future medical damages. *See* Dkt. No. 57 at 12–13.

Because the Court cannot make a definitive determination on the record before it regarding the scope of Dr. Darby's qualifications to provide mental and behavior health opinions,[6] the Court will reserve ruling on this issue. The Court will schedule a future *Daubert* hearing where the Parties will be provided an opportunity to address Dr. Darby's qualifications for providing his opinions regarding Mr. Aldan's need for indefinite ongoing mental and behavioral health treatment.

---

[6] The Court notes that materials generally pertaining to Dr. Darby's qualifications are included in the record, including the transcript of Dr. Darby's deposition, but Plaintiff does not provide any specific record citations that support the contentions regarding the scope of his expertise in its opposition briefing. The Court reminds the Parties that "'[j]udges are not like pigs, hunting for truffles buried in briefs.'" *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (revision in original) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

1    The Court therefore DENIES Home Depot's motions to exclude Dr. Darby as an expert at

2    trial and RESERVES ruling on whether Dr. Darby may provide opinion testimony regarding

3    Mr. Aldan's need for ongoing mental and behavioral health treatment until after a *Daubert*

4    hearing to determine the scope of his qualifications can be held.

**D.     Plaintiff's Motion to Exclude Bradley Probst**

6    Mr. Probst is a mechanical and biomedical engineer. Dkt. No. 39 at 9. He was retained by

7    Home Depot after Dr. Darby responded to Home Depot's deposition questioning regarding the

8    forces involved in the underlying incident that allegedly cause Mr. Aldan's injuries. Dkt. No. 39

9    at 11–12; Dkt. No. 45 at 3–4. According to Home Depot, Dr. Darby's testimony amounted to "a

10   biomechanical analysis," which warranted the retention of Mr. Probst to rebut the causation

11   testimony. Dkt. No. 39 at 11.

12   Plaintiff moves to exclude Mr. Probst on the grounds that (1) he is not competent to

13   provide medical causation testimony; and (2) because he is not a proper rebuttal expert.

14        1.      **Mr. Probst shall not offer medical causation testimony.**

15   As an initial matter, the Parties do not appear to dispute Mr. Probst's qualifications as a

16   biomechanical engineer. Thus, the Court's gatekeeping function under FRE 702 requires a

17   determination as to the reliability and relevance of Mr. Probst's biomechanical opinions.

18   *Ruvalcaba-Garcia*, 923 F.3d at 1188. Home Depot has retained a medical expert, Dr. James

19   Harris, to provide rebuttal testimony to Dr. Darby's medical causation opinions. Dkt. No. 45

20   at 2–5. Home Depot notes that Mr. Probst's expertise may help to provide context for the forces

21   involved in the incident, which would complement Dr. Harris's causation opinions and rebut the

22   credibility of Dr. Darby's anticipated medical causation testimony. Dkt. No. 39 at 10. The

23   potential reliability and relevance of Mr. Probst's testimony is not disputed at this more

24

1    generalized level of abstraction. Instead, the motion is limited to prohibiting Mr. Probst from

2    offering medical causation testimony specifically. Dkt. No. 31 at 5–9; Dkt. No. 45 at 1–2.

3        Mr. Probst is not a medical doctor and is arguably not competent to provide testimony as

4    to medical causation. Dkt. No. 5–9. Home Depot appears to concede this argument, noting that

5    "Mr. Probst was not retained to provide medical opinions and has no intention of offering

6    medical testimony regarding causation." Dkt. No. 39 at 9. But Home Depot describes his

7    complimentary testimony as "whether the forces involved [in the incident] were sufficient to

8    cause [Mr. Aldan's] injuries." *Id.* This description of Mr. Probst's anticipated testimony appears

9    to contradict Home Depot's concession regarding the scope of Mr. Probst's expected testimony

10   and exceeds his engineering expertise by encroaching into the realm of medical causation. *See*

11   *Contreras v. Brown*, No. C17-8217, 2018 WL 7254917, at *3–*4 (D. Ariz. Dec. 4, 2018).

12       The Court therefore finds that Mr. Probst is not qualified to provide testimony as to

13   whether the incident *caused* Mr. Aldan's alleged injuries.

14       2.    **Mr. Probst's rebuttal testimony.**

15       Mr. Probst is also challenged as a rebuttal witness to Dr. Darby's causation testimony

16   based on Home Depot's timing in retaining and disclosing Mr. Probst's expert opinions. Dkt.

17   No. 31 at 11–12. To the extent Plaintiff reiterates arguments regarding Mr. Probst's inability to

18   provide medical causation testimony, those arguments are moot. *See supra,* § III.D.1. Mr. Probst

19   is excluded from providing medical causation testimony.

20       Regarding the necessity of retaining Mr. Probst as a rebuttal expert, Home Depot argues

21   that it was unaware of Dr. Darby's anticipated biomechanical opinions until his deposition, after

22   which Mr. Probst was retained. Dkt. No. 39 at 11. Dr. Darby's supposed "biomechanical

23   analysis" derives from his responses to Home Depot's pointed questions about the forces

24   involved in the incident and how hypothetical changes to Dr. Darby's understanding of the

physical variables involved in the incident might impact his medical conclusions. *See* Dkt. No. 39 at 11; *see also* Dkt. No. 33 at 53 (23:2–24:18), 55 (43:12–44:7), 56 (70:1–72:2). Dr. Darby is not expected to provide biomechanical engineering opinions, and Dr. Harris was retained to provide rebuttal testimony to Dr. Darby's medical causation opinions. Dkt. No. 45 at 2–5.

The Court finds that it is premature at this juncture to exclude Mr. Probst as a potential rebuttal expert.[7] To the extent Dr. Darby's testimony at trial relies on the nature of the forces involved in the incident, the Court finds that Mr. Probst's expertise may be helpful to contextualizing for the jury general biomechanical principles involved.

The Court therefore GRANTS in part and DENIES in part Plaintiff's motion to exclude. Mr. Probst shall not offer medical causation opinions at trial. Mr. Probst may provide general biomechanical testimony to rebut relevant testimony offered by Dr. Darby at trial, but if Plaintiff does not open the door regarding the biomechanical forces involved in the incident requiring rebuttal, then the Court would entertain a future motion to exclude Mr. Probst's biomechanical testimony as irrelevant, cumulative, or potentially more prejudicial than probative to the extent it may confuse the jury more than assist.

---

[7] The Court disagrees with Plaintiff's reading of Justice Yu's concurrence in *Gilmore v. Jefferson Cnty. Pub. Transp. Benefit Area*, 415 P.3d 212 (Wash. 2018). Plaintiff cites *Gilmore* for the proposition that "[i]n a case where the extent of injury and damage are the only issues, a trial court abuses its discretion to admit biomechanical testimony." Dkt. No. 31 at 3 (citing *Gilmore*, 415 P.2d at 223–24). Justice Yu stated the fact that the only disputed issues in the case were the extent of the plaintiff's injuries and the amount of his damages. *Id.* at 223. However, her analysis was simply pointing out the importance of evaluating proposed expert testimony in light of the relevance and admissibility in each individual case. *Id.* Justice Yu pointed out that "[the expert] provided no factual foundation and pointed to no reliable evidence regarding the forces *actually experienced by [the plaintiff] in this particular accident.*" *Id.* (emphasis added). Therefore, the actual reason Justice Yu agreed with the exclusion of the testimony of the biomechanical engineer rested on the expert's intent to "import 'average person' studies . . . to speculate what the transfer of energy *might* have been in this case, and assuming that initial speculation was accurate, whether the impact on Mr. Gilmore could *really* have caused the alleged injuries." *Id.* (emphasis in original). Mr. Probst's analysis, to the contrary, is tied to an analysis that applied biomechanical methodologies to the actual facts in this case. *See* Dkt. No. 39 at 4–5.

**E.     Home Depot's Renewed Motion for Partial Summary Judgment**

In its prior order, the Court extended the discovery period limited to two specific issues: "(i) Dr. Darby's opinions regarding Plaintiff's past medical expenses; and (ii) Plaintiff's ongoing post-operative care and determination of future work capacity only." *Id.* at 18. These limitations stemmed from two circumstances: (1) the Court denied Home Depot's motion to strike Dr. Darby's late-filed declaration as a supplement to his expert reports but instead allowed Home Depot an opportunity to depose Dr. Darby on the newly disclosed opinions at Plaintiff's expense, if it so chose; and (2) the Court deferred ruling on Home Depot's request to dismiss Plaintiff's claims for future wage loss and loss of earning capacity "to allow Plaintiff an opportunity for his medical condition to stabilize enough to determine his future work capacity." Dkt. No. 57 at 9–11, 16. The Court also granted Home Depot leave to renew its summary judgment motion related to the deferred future work capacity issue. *Id.* at 18.

Home Depot now renews its motion for partial summary judgment seeking dismissal of Mr. Aldan's claims for "(1) . . . past medical bills not related to his left hip; (2) . . . future medical treatment; and (3) . . . loss of future earnings capacity." Dkt. No. 65 at 1.

**1.     Out-of-scope issues in renewed motion.**

Home Depot's attempt to renew summary judgment on previously decided issues may be summarily denied, as the Court was clear that it would entertain a renewed motion on the future work capacity issue only. *See* Dkt. No. 57 at 18. Home Depot refers to a line in the Court's order regarding its denial of summary judgment on the past medical cost issue and extension of the discovery deadlines, wherein the Court contemplated that Home Depot may "re-file, but only with regard to any arguments that may arise due to the additional discovery of Dr. Darby and if appropriate." Dkt. No. 12. The Court acknowledges that this statement may have caused

justifiable confusion as to whether summary judgment regarding past medical costs could be renewed.

That said, there was no reason for Home Depot to believe that the Court would allow renewal of its challenge to Mr. Aldan's future medical treatment and cost claims. Even without the extended discovery, the Court found that "Plaintiff [] presented sufficient evidence to survive summary judgment" on this issue. Dkt. No. 57 at 13. The Court therefore DENIES Home Depot's renewed motion for summary judgment as to Mr. Aldan's claims for damages related to future medical treatment and costs.

2.    **Plaintiff's damage claims for past medical costs.**

The Court previously found that Dr. Darby would be allowed to opine as to the reasonableness and necessity of past medical costs derived from his belatedly disclosed supplement to his previous reports by way of declaration. Dkt. No. 57 at 11–12. The inclusion of Dr. Darby's declaration was sufficient to defeat summary judgment on this issue related to all past medical costs because Home Depot had prior notice that Dr. Darby was prepared to opine on the reasonableness and necessity of all of the previously disclosed medical costs and of the expenses Mr. Aldan might claim. *Id.* at 10–12.

Home Depot now notes that Dr. Darby's most recent expert report "limits the reasonable and necessary billed medical expenses to those associated with Plaintiff's left hip." Dkt. No. 65 at 8–9 (citing Dkt. No. 66-4 at 27 (sealed)). Home Depot argues that there is no evidence to support a damages claim for any medical costs not specifically related to his left hip. *Id.* Dr. Darby's prior declaration and deposition testimony, which was sufficient to defeat summary judgment on this issue previously, is still part of the record on summary judgment. Dkt. No. 72 at 5. The Court agrees that Dr. Darby's testimony concerning past medical expenses shall be limited to "medical expenses *associated* with his left hip condition" as he concludes in his

March 17, 2023, report. Dkt. No. 66-4 at 27 (emphasis added). While not a model of clarity as to which expenses are *associated* with Mr. Aldan's left hip condition,[8] Dr. Darby's prior declaration and deposition testimony should also be taken into consideration and do not necessarily conflict with his most recent report. As such, the Court finds that a dispute of fact regarding the reasonableness and necessity of all past medical costs still exists.

3.     **Plaintiff's damages for lost earning capacity.**

Home Depot's renewed motion regarding the claim for damages related to Mr. Aldan's loss of future earning capacity rely entirely on its motion to exclude Dr. Darby's opinions regarding Mr. Aldan's ability to return to his prior occupation as a glazer. Dkt. No. 65 at 12. Plaintiff further points to his own testimony regarding his work capacity and change in income since the incident, supported by income records. Dkt. No. 72 at 8. Home Depot refutes the sufficiency of this evidence on reply, but again relies heavily on the exclusion of Dr. Darby's work capacity opinions. Dkt. No. 73 at 6–8. The Court denies Home Depot's motion to exclude Dr. Darby's opinions on this issue. *Supra*, § III.C.3. Consequently, Home Depot's arguments indicate at most that a dispute of fact still exists.

The Court therefore DENIES Home Depot's renewed motion for partial summary judgment.

## IV.     CONCLUSION

Accordingly, the Court ORDERS as follows:

---

[8] The Court extended discovery to allow Home Depot to re-depose Dr. Darby regarding cost-related testimony at Plaintiff's expense and invited it to submit a motion for costs for the logistical expenses of re-deposing Dr. Darby. Dkt. No. 57 at 11–12. The Court never received any such motion for costs, so it does not know whether or not Home Depot chose to re-depose Dr. Darby. In any event, Home Depot is free to probe Dr. Darby on cross-examination on the issue of what medical expenses he considers are "associated with" Mr. Aldan's left hip condition.

(1)     Home Depot's motion to exclude the expert testimony of Dr. Jason King (Dkt. No. 29) is DENIED.

(2)     Home Depot's motion to exclude expert opinions of Dr. Theodore Becker (Dkt. No. 64) is DENIED.

(3)     Home Depot's motions to exclude Dr. Paul Darby (Dkt. Nos. 32, 63) are DENIED, but the Court RESERVES ruling on whether Dr. Darby may provide opinion testimony regarding Mr. Aldan's need for ongoing mental and behavioral health treatment until after a *Daubert* hearing to determine his qualification in this area of medicine can be held.

(4)     Plaintiff's motion to exclude the expert testimony of Bradley Probst (Dkt. No. 31) is GRANTED in part and DENIED in part.

   a.   Mr. Probst shall not provide medical causation testimony.

   b.   To the extent Mr. Probst is called to provide rebuttal testimony, Plaintiff may renew its motion to exclude Mr. Probst's biomechanical testimony if appropriate at trial.

(5)     Home Depot's renewed motion for partial summary judgment (Dkt. No. 65) is DENIED.


Dated this 31st day of August 2023.


Tana Lin
United States District Judge